Blanche Rosenzweig, Transferee, et al., [1] v. Commissioner. Rosenzweig v. Commissioner
Docket Nos. 31529, 31530, 31537, 31538. .
United States Tax Court
T.C. Memo 1955-67; 1955 Tax Ct. Memo LEXIS 272; 14 T.C.M. (CCH) 209; T.C.M. (RIA) 55067; March 22, 1955
Charles A. Morehead, Esq., H. P. Forrest, Esq., 1504 DuPont Building, Miami, Fla., and Lawrence G. Ropes, Jr., Esq., for the petitioners. Newman A. Townsend, Jr., Esq., and Leigh A. Crockett, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The Commissioner determined that the petitioners in Docket Nos. 31529, 31530 and 31538, were liable as transferees for deficiencies and penalties allegedly due from A. M. Bear & Sons, Inc., of Miami, Florida, as follows: Taxable
year
50%
25%
ended
Tax
Deficiency
Penalty
Penalty
8-31-43
Income
$ 661.01
$ 330.50
Excess profits
3,315.46
1,657.73
$828.87
8-31-44
Income
1,024.12
512.06
Declared value excess profits
87.62
43.81
Excess profits
4,771.02
2,385.51
Taxable
period
ended
12-31-44
Income
265.60
132.80
Excess profits
2,828.39
1,414.20
Total
$12,953.22
$6,476.61
$828.87
The deficiencies in the corporation's income and excess profits taxes arose from the disallowance in their entirety of deductions claimed for salaries *274 paid to one Philip Kirschenbluth, as follows: Salary
deduction
Taxable year ended
claimed
8-31-43
$6,615
8-31-44
9,620
Taxable period ended
12-31-44
2,830
The issues presented by the foregoing cases are: 1. Whether the corporation is entitled to deduct all or any part of the amounts paid as salary to Philip Kirschenbluth; 2. In the event that the salary deductions so claimed are not allowable in their entirety, whether any part of the deficiencies resulting therefrom is due to fraud with intent to evade tax; 3. Whether failure of the corporation to file an excess profits tax return for the fiscal year ended August 31, 1943, was due to reasonable cause or to wilful neglect; 4. Whether the deficiencies, if any, in the corporation's income and excess profits taxes for the fiscal year ended August 31, 1943, are barred by the statute of limitations; and 5. Whether the respective petitioners are liable as transferees of the assets of A. M. Bear & Sons, Inc., and, if so, to what extent. In Docket No. 31537, the Commissioner determined deficiencies in the income tax of Abraham M. Bear and asserted fraud penalties as follows: 50% fraud
Year
Deficiency
penalty
1945
$ 954.08
$ 477.04
1946
3,693.50
1,846.75
Total
$4,647.58
$2,323.79
*275 The deficiencies arose from the disallowance by the respondent of deductions claimed for salaries paid by the partnership of A. M. Bear & Sons during its fiscal years ended July 31, 1945, and July 31, 1946, as follows: Fiscal year ended 7/31
1945
1946
Clara Bear
$1,700
$5,200
Lena Kirsch
5,100
The sole issues presented in the last case are the deductibility of the foregoing salaries and, if it is determined that the same are not deductible in full, whether any part of the deficiencies arising thereby is due to fraud with intent to evade tax. Findings of Fact A partial stipulation of the facts and the exhibits referred to therein are incorporated herein by this reference. Petitioners Joseph and Blanche Rosenzweig have been husband and wife since 1932, and during all of the years involved herein were residents of New York, N. Y., and filed their federal income tax returns with the collector of internal revenue for the third district of New York. Joseph Rosenzweig has been engaged in the ladies' handbag business since the early 1920's. Blanche Rosenzweig is the daughter of Philip and Lena Kirschenbluth, who are sometimes known as P. Kirsch and *276 Lena Kirsch. Abraham M. Bear was, during the years in issue, a resident of Miami, Florida, and filed his federal income tax returns with the collector of internal revenue for the district of Florida. He died intestate on September 2, 1950, and his widow, Clara Bear, is the duly qualified and acting administratrix of his estate. Abraham and Clara Bear were husband and wife for many years prior to 1942, but subsequent to his death she remarried and her name is now Clara Bear Kahn. In 1942 Joseph Rosenzweig's father-in-law, Philip Kirschenbluth, hereinafter referred to as Phil, was a man of approximately 65 to 67 years of age and in ill health. At that time he had been unemployed for approximately 10 years and, apart from nominal amounts of income from other sources, he and his wife Lena were being supported by Joseph and Blanche Rosenzweig. Prior thereto he had earned a small livelihood by selling merchandise from house to house on the installment plan. In 1942 his health permitted him to do only light nonmanual work. While on a vacation in Florida in the latter part of 1942, Joseph Rosenzweig, hereinafter referred to as Joe, inquired of a friend as to the availability of some *277 investment or business which would provide his father-in-law with both an income and a means of occupying his time. As a result of this inquiry Joe was introduced to Abraham M. Bear, who had been engaged in the business of manufacturing women's dresses in Miami, Florida, since 1939. Prior to that he had been engaged in a similar business in Brooklyn, New York. Bear was a thoroughly experienced and qualified factory production man in the dress business, but at that time required additional financing and was encountering great difficulty in securing material to be manufactured into dresses. He was anxious to become associated with Joe because he anticipated that the latter's reputation, credit rating, and contacts in the New York market would be very valuable in securing the required merchandise. Joe made it clear to Bear that his own ladies' handbag business required all of his time, but that he was perfectly willing to enter into a business arrangement with Bear if Bear would accept Joe's father-in-law, Phil, as an employee charged with the duty of actually following up orders placed for merchandise with which task Joe would assist him. At that time, due to wartime shortages, the supply *278 of dress material was so short that many suppliers failed to honor orders placed with them, and unless constant pressure was maintained upon them they would often fail to make deliveries. Although Bear was represented by a resident buying firm in New York he could not depend upon it to obtain enough merchandise to satisfy his needs. With the foregoing understanding Joe and Bear organized a corporation, A. M. Bear & Sons, Inc., in November 1942, under the laws of Florida, for the purpose of manufacturing and selling women's garments, with its principal office and place of business in Miami, Florida. Only 30 of the 50 authorized shares of no par stock were ever issued, and on the commencement of business the stockholders, officers, and directors were as follows: Shares
Abraham Morris Bear
President
15
Joseph Rosenzweig
Treasurer
14
P. Kirsch
Secretary
1
Phil's one share represented a gift from Joe who wanted his father-in-law to feel he had a personal stake in the business. On the same day that the corporation was organized Joe and Bear entered into a stockholders' agreement, setting forth their rights and their obligations, duties, and liabilities *279 towards one another. This agreement, in part, recognized that Bear would be the production head of the business and would devote all of his time thereto, and that Joe would lend the corporation such additional funds as in his opinion the business warranted. The salary of Bear was initially fixed at $50 per week and that of Joe at $35 per week, with the proviso that whenever an increase was given to Bear a similar increase would be given to Joe, so that the latter's salary would always be $15 a week less than that paid to Bear. Paragraph 12 of the agreement, under which Joe was the party of the second part, provided as follows: "It is mutually understood and agreed that the party of the second part shall act as financier of the said, corporation and shall also act as executive director of said corporation, with no obligation in any way to do work for the corporation with respect to the production angle or any other phase of the business other than executive leadership. It is also mutually understood and agreed that the party of the second part shall have the right to substitute anyone he sees fit as executive leader of the said corporation, and may have the corporation assign all *280 of the salaries that would have been entitled to have been received by the party of the second part, to such appointed party." By resolution dated November 30, 1942, the stockholders' agreement was adopted in its entirety by the corporation. During 1943 and 1944, Bear, who remained in Miami, sent copies of orders for merchandise placed through the corporation's resident buyer in New York to Joe for the purpose of having them followed up so that delivery would be made despite the tightness of the market. Joe, in turn, gave such orders to Phil, who would both telephone and call upon the suppliers in order to keep a continual pressure upon them for delivery. Where Phil found that he was unable to secure results he would request Joe to assist him and both would call upon or telephone the various suppliers. Many times Joe had to guarantee payment in order to secure delivery. During the six or seven months a year that he was in New York, Phil spent approximately three hours a day, four or five days a week, working for the corporation. However, such success as the corporation had in securing the delivery of merchandise to manufacture into dresses was due primarily to the reputation, credit *281 standing, contacts, and personal efforts of Joe, and only to a small degree to the efforts of Phil. Phil spent approximately five or six months of the year in Miami, Florida, usually during the wintertime, and Joe would take over his duties in New York during such periods. While in Miami Phil assisted at the factory by examining merchandise received, watching the doors to see that no material was stolen, and speaking to customers, or generally keeping watch at the plant while Bear and Bear's son David, who was also active in the business, were absent. Joe exercised his rights under the foregoing provision of the stockholders' agreement to the extent of directing that the salary to which he would have been entitled be paid to his father-in-law for the services rendered by him in New York in obtaining merchandise and in Miami for miscellaneous activities at the factory. At the first meeting of the board of directors on November 30, 1942, the salary of Bear, as president, was fixed at $150 per week. On September 8, 1943, a resolution of the board of directors of the corporation was adopted increasing this salary to $200 per week. Salary checks were never issued to Joe, but from *282 December 8, 1942, until January 4, 1945, salary checks drawn payable to Phil were sent to Joe, who cashed them for his father-in-law. Joe withheld a portion of each payment for tax purposes and did not pay over to his father-in-law the entire amount of the check. Joe kept no records as to the amounts so withheld. No resolution was ever adopted by the corporation's directors or stockholders authorizing the payment of salaries in any amount to either Phil or Joe. From December 1, 1942, until February 2, 1944, inclusive, Phil's gross salary before payroll deductions was $35 per week. From February 2, 1944, until January 4, 1945, inclusive, it was $85 a week. However, the following additional amounts, less payroll deductions, were paid to him on the dates stated: Date
Gross payment
6-23-43
$ 3,900
10-28-43
1,350
3-23-44
3,700
6-23-44
1,300
10-24-44
1,300
12-29-44
1,300
Total
$12,850
On each of these dates a similar amount, less withholding taxes, was paid to Bear. The reasonable value of the personal services rendered by Phil to the corporation during the fiscal years ended August 31, 1943, and August 31, 1944, and during the taxable period ended December 31, 1944, was *283 $35 per week. On December 5, 1944, the issued and outstanding stock of A. M. Bear & Sons, Inc., was held as follows: Shares
Abraham Morris Bear
15
Blanche Rosenzweig
15
Blanche's shares had been received by her from the following sources: Shares
1-4-44 Philip Kirschenbluth
1
12-5-44 Joseph Rosenzweig
13
12-5-44 Joseph Rosenzweig
1
At a meeting of the stockholders and directors of the corporation held on December 5, 1944, a resolution was adopted authorizing the officers to take the steps necessary to effect a dissolution and directing that the assets remaining after the payment of liabilities be distributed equally to Abraham Morris Bear and to Blanche Rosenzweig. A duly authenticated copy of this resolution was filed with the Secretary of the State of Florida on December 29, 1944, and a final certificate of dissolution was issued on January 9, 1945. On December 31, 1944, immediately prior to its liquidation and dissolution, the corporation's balance sheet was as follows: "Assets: Cash
$ 1,379.77
Accounts receivable
$32,276.21
Less: Reserve for bad debts and discounts
3,403.50
28,872.71
Inventory
55,154.63
Loans
71.15
Machinery and equipment
7,966.40
Less: Reserve for depreciation
1,268.84
6,697.56
Prepaid expenses
2,076.61
Total assets
$94,252.43
"Liabilities and net worth: Accounts payable
$13,442.64
Accrued expenses
10,271.87
Loans - due officers
38,576.54
Other liabilities
45.88
Capital stock
19,000.00
Earned surplus
12,915.50
Total liabilities and net worth
$94,252.43"
*284 The fair market value of the assets was then equal to their book value. For the taxable years ended August 31, 1943 and 1944, and for the taxable period ended December 31, 1944, the corporation filed its federal income tax returns with the collector of internal revenue for the district of Florida. No excess profits tax return was filed for the fiscal year ended August 31, 1943. Pursuant to an agreement dated December 28, 1944, Bear and Blanche Rosenzweig formed a partnership under the name of A. M. Bear & Sons as of January 1, 1945, for the purpose of manufacturing ladies' dresses and wearing apparel. Upon the dissolution of the corporation on December 31, 1944, all of its assets, subject to its liabilities, were transferred to the partnership and each of the partners was credited with an investment of $15,960.25. Blanche Rosenzweig and Abraham Bear are each transferees of the assets of the corporation to the extent of $47,126.21. Joseph Rosenzweig was not a stockholder of the corporation at the time of its dissolution, received none of the corporation's assets, and is not a transferee thereof. The partnership agreement provided, among other things, that Blanche would lend *285 the partnership such additional amounts as future business might warrant and salaries were fixed at $150 per week for Bear and $135 per week for Blanche, with the proviso that if Bear received an increase a similar increase would be given to Blanche. Profits and losses were to be shared equally. For the taxable period of the partnership from January 1, 1945, to July 31, 1945, inclusive, the partnership claimed a deduction of $1,700 for salary paid to Clara Bear. For the fiscal year ended July 31, 1946, the partnership claimed deductions of $5,200 and $5,100 for salaries paid, respectively, to Clara Bear and to Lena Kirsch, Phil's wife. The respondent had disallowed the deductions claimed for these salaries in full on the ground that neither recipient had performed any services for the partnership during the periods involved. A deficiency in the income tax of Abraham M. Bear was thereupon determined for his taxable years 1945 and 1946 and fraud penalties were asserted. Prior to her marriage Clara Bear had worked as a machine operator and forelady in a garment factory. After her marriage she assisted her husband in running his garment factory first in Brooklyn and later in Miami. *286 In the Miami plant during 1945 and 1946 she filled in at various jobs where her services were required, spent considerable time in the draping and finishing department and generally kept an eye on factory operations. She was in the plant almost daily during 1945 and 1946 and supervised it while Abraham M. Bear was in New York on business trips. Their son, David Bear, who had assisted his father in running the business, had died in August of 1944. In addition, Clara Bear shopped the local stores and bought dresses for the purpose of having the styles copied by her husband's designer. During the periods January 1, 1945, to July 31, 1945, and August 1, 1945, to July 31, 1946, Clara Bear was an employee of the partnership of A. M. Bear & Sons and rendered personal services to it, the reasonable value of which for the respective periods was not less than $1,700 and $5,200. Prior to her employment by the partnership in 1945, Lena Kirsch had had no business experience. She was then a woman of about 60 years of age. During the fiscal year ended July 31, 1946, she was an employee of the partnership and rendered personal services to it by assisting the partners, her daughter, Blanche Rosenzweig, *287 and Bear in the shopping for and the selection of styles for their dresses and by taking over part of the work of following up on orders for merchandise previously performed for the corporation by her husband. She devoted five to six hours a day, three to four days a week, to the business and the reasonable value of her services for the fiscal year was $35 per week. The notices of deficiency to the petitioners herein were all mailed on August 31, 1950. Abraham M. Bear had executed consents extending the period of limitation upon the assessment of income taxes for his taxable years 1945 and 1946 to June 30, 1951. On May 16, 1947, the two Rosenzweigs and Bear executed a so-called "Transferee Letter Agreement" which is set forth in full below: "In consideration of the Commissioner of Internal Revenue not issuing a statutory notice of deficiency to and making an assessment against A. M. Bear and Sons, Inc. which was incorporated under the laws of the State of Florida on November 25, 1942, the undersigned Abraham M. Bear, Joseph Rosenzweig, Blanche Rosenzweig admit that they are the transferees of the assets of the said A. M. Bear and Sons, Inc. and assume and agree to pay the amount *288 of any and all Federal income, excess profits, or profits taxes finally determined of adjudged as due and payable by the A. M. Bear and Sons, Inc. for the taxable years ended August 31, 1943, August 31, 1944 and for the period ended December 31, 1944. "The undersigned further agree (1) not to contest or deny in court or otherwise liability as transferee, (2) in the absence of the prior written consent of the Commissioner, not to sell, transfer, or assign without adequate consideration all or any substantial portion of its assets, (3) upon request of the Commissioner, to execute consents in writing extending the period of limitation for assessment." Neither A. M. Bear & Sons, Inc., nor any of its stockholders nor any of the petitioners executed any consent extending the period of limitation for the assessment of income taxes, excess profits taxes, or declared value excess-profits taxes for the fiscal year ended August 31, 1943. The two Rosenzweigs and Abraham Bear executed consents extending to June 30, 1951, the period of limitation for the assessment of the amount of their liabilities, as transferees, with respect to any income, excess profits, or war profits, and additions thereto *289 of the corporation for its fiscal year ended August 31, 1944, and the taxable period ended December 31, 1944. No part of the deficiencies in income and excess profits taxes due from A. M. Bear & Sons, Inc., for the fiscal years ended August 31, 1943, and August 31, 1944, and for the taxable period ended December 31, 1944, was due to fraud with intent to evade taxes. No part of the deficiencies determined against Abraham Morris Bear for 1945 and 1946 with respect to the income of the partnership of A. M. Bear & Sons was due to fraud with intent to evade taxes. The corporate income tax return of A. M. Bear & Sons, Inc., for its fiscal year ended August 31, 1943, was prepared and filed by Eugene J. Weiss, a certified public accountant of the State of Florida. He advised the corporation that its net income for that year was not sufficient to require the filing of an excess profits tax return and upon this advice no such return was filed. Weiss had been the corporation's accountant since it went into business in November of 1942 and had conducted a continuing monthly audit of its books in the course of which he had ascertained that there was a voucher or other authorization for salaries *290 paid but had not gone into the question of the reasonableness of the amounts paid. The failure of the corporation to file an excess profits tax return for its fiscal year ended August 31, 1943, was due to reasonable cause and was not due to wilful neglect. Opinion LEMIRE, Judge: The determination of the liability of the petitioners in the three transferee cases consolidated herein for the deficiencies and penalties asserted against A. M. Bear & Sons, Inc., turns upon the question of the reasonableness of the salary paid Philip Kirschenbluth for the fiscal years of the corporation ended August 31, 1943, and 1944 and for the taxable period ended December 31, 1944. Similarly, the liability of the estate of Abraham M. Bear for additional income taxes and penalties for 1945 and 1946 depends upon the reasonableness of salaries paid by the partnership of A. M. Bear & Sons to Clara Bear, the decedent's wife, and to Lena Kirsch. These issues have been disposed of by our findings of fact and we set forth below our reasons for the conclusions we have reached. Among the ordinary and necessary expenses incurred in carrying on a trade or business which are allowed as deductions under section *291 23(a)(1)(A) of the Internal Revenue Code of 1939 is "a reasonable allowance for salaries or other compensation for personal services actually rendered." Whether payments for such services are reasonable must be determined in the light of the entire situation and consideration must be given to what amounts would ordinarily be paid for like services by like enterprises under like circumstances. Regulations 111, sec. 29.23(a)-6. The issue is one of fact and the burden of establishing the reasonableness of the compensation paid is on the petitioners. E. Wagner & Son v. Commissioner, 93 Fed. (2d) 816, affirming T.C. memorandum opinion filed May 26, 1936. Taking up the question of Phil's compensation first, it is necessary to review the purpose for which the corporation was organized. Bear, an experienced factory man in the ladies' garment field, was in serious need of additional financing and merchandise in order to keep his plant in operation, and he saw in Joseph Rosenzweig a means of securing both. Joe not only had money to invest but due to his many years in the ladies' handbag business he had credit standing, reputation, and contacts in the New York market which could *292 secure goods. To Joe, Bear's business represented not only an investment but a source of employment for his father-in-law who was in poor health and needed something to occupy his time as well as a means of livelihood as a substitute for the support Joe had been providing for several years. Since Joe did not expect to be able to devote any substantial amount of time to the corporation he agreed with Bear that his participation would be that of financier and executive leader. Recognizing that his prime service for the corporation would be securing merchandise, he arranged with Bear for the employment of Phil to follow up on orders placed with various suppliers in order to secure or expedite deliveries on the understanding that he, Joe, would assist Phil when necessary. While paragraph twelfth of the stockholders' agreement sets forth Joe's right to substitute someone else as executive leader of the corporation and to have that person paid the salary that would otherwise have gone to Joe, it is clear from the entire record that Joe would never have surrendered such leadership to Phil and that this provision did not express the intent of the parties. Phil was not capable of assuming *293 any such duties. The agreed arrangement was carried out to the extent that Phil was employed to follow up on orders and was paid a salary therefor. Even though he was in ill health, Phil was capable of telephoning the various suppliers and of calling upon them to urge delivery and we are satisfied that he rendered such services. However, on very many, if not on most occasions, Joe had to take over on the telephone calls or accompany his father-in-law on the personal visits to suppliers in order to add the weight of his own business reputation and credit rating to Phil's appeals for goods. It was often necessary for Joe to guarantee payment before delivery would be made. It is abundantly clear from the evidence, and we have so found, that such success as the corporation had in securing goods was due primarily to the personal efforts, as well as the contacts and business standing of Joe. Phil's contribution in view of the tight market conditions existing was small. The petitioners called two witnesses to testify as to the value of the services of an expediter in securing goods under the conditions then existing. One was Bear's son-in-law, and during the years in issue he was in military *294 service and did not have personal knowledge of the market. The testimony of the second and disinterested witness furnished no accurate or relevant information as to the value of the services rendered to the corporation by Phil. The additional services rendered by Phil to the corporation in Miami have been described in our findings of fact and have been considered in determining the issue of the value of his over-all compensation. We have given careful consideration to the various factors that are usually applied in determining reasonable compensation (see Mayson Mfg. Co. v. Commissioner, 178 Fed. (2d) 115, 119, and J. Warren Leach, 21 T.C. 70) and have concluded that the amount paid Phil was not reasonable in the light of the personal services actually rendered by him. The possibility that the total deduction for the salaries of all of the officers for all of the services rendered by them (including those rendered by Joe without pay in assisting Phil) might in the aggregate have been reasonable compensation for the total of such services is immaterial. The test to be applied is the value of the individual services of Phil. L. Schepp Co., 25 B.T.A. 419. *295 The fact that Joe, an officer of the corporation, was paid nothing for assisting Phil does not render reasonable the salary paid to Phil. Desmond's, Incorporated, 15 B.T.A. 738. We have found as a fact that a reasonable allowance for Phil's services to the corporation during the tax periods involved was at the rate of $35 per week. While we have found that the salary paid Phil was excessive and have determined that a considerably smaller amount was reasonable compensation for the services performed by him, such fact, standing alone, does not justify the imposition of the fraud penalty and we, therefore, are of the opinion that the respondent has failed to sustain his burden of proving by clear and convincing evidence that any part of the resulting deficiencies was due to fraud with intent to evade tax. There is uncontradicted evidence that throughout the tax periods involved Phil rendered services of some substance to the corporation. If the payments had been made to Joe for his work in connection with securing merchandise, it seems clear that a substantial part, if not all, of the deduction would have been allowable and the corporation's income taxes probably would *296 not have been questioned. There is no basis in the record herein for finding that the payments to Phil were merely a distribution of profits disguised as compensation for nonexistent services. Cf. Bennett E. Meyers, 21 T.C. 331. While the excessive salary payments to Phil may have been planned by Joe as a means of reducing his personal income taxes on funds to be used for the support of his in-laws, we do not have Joe's personal taxes before us. The corporation's tax returns were all signed by Bear, as president, and there is no evidence that he knew the extent of the assistance Phil required from Joe in performing his duties. Bear owned one-half of the stock and had nothing to gain from a diversion from Joe to Phil of salaries for the valuable services rendered to the corporation. In view of these circumstances, any possible fraud on Joe's part cannot be attributed to the corporation. Cf. Auerbach Shoe Co., 21 T.C. 191, affd. 216 Fed. (2d) 693; Ace Tool & Eng., Inc., 22 T.C. 833; Bennett E. Meyers, supra. The respondent also imposed a penalty upon the corporation under section 291, Internal Revenue Code of 1939, *297 for its failure to file an excess profits tax return for its fiscal year ended August 31, 1943. No such return was filed upon the advice of the certified public accountant who regularly audited the corporation's books and prepared its tax returns. The accountant testified that while he verified that salary payments were made, he did not consider the question of their reasonableness. However, no facts were withheld from the accountant and we believe the corporation's officers, acting in good faith, relied upon his advice that no excess profits tax return was required. The penalty for failure to file such return is not sustained. R. E. Nelson, 19 T.C. 575; Rhett W. Woody, 19 T.C. 350. The petitioners have pleaded the statute of limitations as barring any assessment of income and excess profits taxes with respect to the fiscal year of the corporation ended August 31, 1943. Although the petitioners signed the transferee letter agreement dated May 16, 1947, which is set forth in our findings, we do not read this agreement as itself amounting to a consent to any extension of the period of limitation for assessment of that year's taxes, and the respondent has *298 admitted in his answers to amendments to the petitions filed by Joseph and Blanche Rosenzweig that no such consents were given. Furthermore, the respondent has not alleged that petitioners are estopped by reason of their having signed the transferee agreement from pleading the statute of limitations. Bamberg Cotton Mills Co., 8 B.T.A. 1236. Both the corporation's income tax return and its excess profits tax return were due on November 15, 1943. Secs. 53(a)(1) and 729(a), I.R.C. (1939). The period of limitation for the assessment of income tax against the corporation for its fiscal year ended August 31, 1943, or against the transferee of its assets upon dissolution expired prior to the mailing of the deficiency notices on August 31, 1950, and any deficiency is now barred. Secs. 275(a) and 311(b), I.R.C. (1939). However, the statute has not run against the assessment of excess profits taxes since no return was filed and the transferees remain liable. Secs. 276(a) and 311(b), I.R.C. (1939). A final issue with respect to the corporation's taxes is the extent of the liability of three of the petitioners as transferees of its assets for the deficiencies asserted herein. *299 In the transferee agreement executed by Joe, Blanche, and Abraham Bear on May 16, 1947, all three signers admit that they are transferees of the assets of the corporation and agree to pay any additional taxes that may be assessed against it. They also agreed not to contest their liability as transferees. This so-called transferee agreement is insufficient to establish the petitioners' liabilities as transferees, and, indeed, the respondent has not even referred to it in the portion of his brief devoted to this issue. However, since the agreement was received in evidence pursuant to the stipulation of the parties, we deem it necessary to comment upon it briefly. The burden of showing that the petitioners are liable as transferees is placed upon the respondent by statute. Sec. 1119, I.R.C. (1939). We have held that even where the taxpayer admits that he is the transferee of the assets of a dissolved corporation, unless he admits the extent of his liability the Commissioner must still prove the value of the assets so received by him in order that we may determine the amount of taxes due from him. Willard H. Ashton, 28 B.T.A. 582; Ludwig Vogelstein, 16 B.T.A. 947. *300 There are no such admissions in the transferee agreement, and we must therefore consider the other evidence in the record bearing upon this issue in order to determine the extent of the liability of each of the transferees. The record establishes that prior to the dissolution of the corporation on December 31, 1944, Joseph Rosenzweig had transferred by way of gifts all of his stock to his wife and that on that date the sole stockholders were Blanche Rosenzweig and Bear, each of whom owned 15 shares of stock. Joe never received any of the assets of the corporation upon its dissolution and, therefore, was not a transferee of its property, notwithstanding his execution of the agreement of May 16, 1947. The parties have stipulated that upon dissolution of the corporation all of its assets, subject to all of its liabilities, were transferred to the partnership composed of Blanche and Bear. The agreed total value of the assets transferred was $94,252.43 and the total liabilities assumed were $62,336.93. Each of the partners contributed an equal portion of his or her net interest in the transferred assets to the partnership. However, as the stockholders of a dissolved corporation, they *301 are each liable for its unpaid taxes and penalties thereon to the extent of the full value of the assets each received unless they show that the other liabilities had priority over the Government's claim for taxes. Hutton v. Commissioner, 59 Fed. (2d) 66, affirming 21 B.T.A. 101; Fada Gobins, 18 T.C. 1159, affd. 217 Fed. (2d) 952; Estate of L. E. McKnight, 8 T.C. 871. No such showing was made and, accordingly, Blanche and Bear are liable to the extent of $47,126.21 each as transferees of the assets of A. M. Bear & Sons, Inc., for the entire amount of the taxes and additions thereto which may be due. Phillips v. Commissioner, 283 U.S. 589. The deficiencies and penalties asserted in Docket No. 31537 against the estate of Abraham M. Bear turn upon the reasonableness of salaries paid by the partnership of A. M. Bear & Sons in 1945 and 1946 to Clara Bear, the decedent's wife, and to Lena Kirsch, Blanche's mother. It is clear from the testimony of several witnesses that Clara Bear was thoroughly experienced in the various phases of running a garment factory and during the years in question devoted almost full *302 time to assisting her husband in managing the factory. Except when she was style shopping in local stores, she was at the plant daily assisting in the finishing and shipping departments or wherever else her services were required. She also supervised the plant in the absence of her husband. We have found as a fact that the salary paid to her for such services was reasonable. The situation is not the same with respect to Lena Kirsch, a woman of 60 without previous business experience. From the evidence, we are satisfied that while she performed some services for the partnership by assisting in shopping for styles and by following up on merchandise orders, the salary of $5,100 paid her in the partnership's fiscal year ended July 31, 1946, was excessive, and we have found that a reasonable allowance for her services was $35 per week. The Commissioner has not proven by clear and convincing evidence that any part of the deficiency in Bear's income tax for 1946 was due to fraud and upon this issue we sustain the petitioner. If the adjustments herein made result in a decrease in the excess profits tax liabilities asserted against the corporation for its fiscal years ended August 31, 1943, and *303 1944, and for its taxable period ended December 31, 1944, and such decreases result in the reduction or elimination of the adjusted excess profits net income of A. M. Bear & Sons, Inc., for those periods, then the adjusted excess profits net income used as a credit in the computation of the normal tax net income shall be adjusted accordingly and shall be used in the computation of any deficiency in income tax. Decision of no liability will be entered for the petitioner in Docket No. 31530. Decisions will be entered under Rule 50 in Docket Nos. 31529, 31537, and 31538. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Blanche Rosenzweig, Transferee, Docket No. 31529; Joseph Rosenzweig, Transferee, Docket No. 31530; Estate of Abraham M. Bear, Deceased, Clara Bear Kahn, Administratrix, Docket No. 31537; and Estate of Abraham M. Bear, Deceased, Transferee, Clara Bear Kahn, Administratrix, Docket No. 31538.↩